## DUNCAN v. STATE. (8 Div. 229.)

(Court of Appeals of Alabama. July 22, 1924. Rehearing Denied Aug. 19, 1924.)

1. **Incest ⬅14—Evidence of prosecutrix held to sustain conviction.**

Uncorroborated evidence of prosecutrix, though contradictory, *held* sufficient to sustain conviction.

2. **Criminal law ⬅507(7)—13 year old prosecutrix in incest case not "accomplice," whose testimony must be corroborated.**

Prosecutrix, 13 years old, in incest prosecution, was not "accomplice" within Code 1907, § 7897, and her testimony need not be corroborated, notwithstanding section 7127, but opposite would be law as to woman of sufficient age to consent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accomplice.]

3. **Incest ⬅16—Accused held not entitled to affirmative charge.**

Accused *held* not entitled to affirmative charge.

4. **Criminal law ⬅753(2)—Affirmative charge never given where there is any evidence of guilt, however weak.**

Affirmative charge should never be given when there is any evidence, however weak and inconclusive, tending to make out offense against accused.

5. **Criminal law ⬅789(15)—Instruction to acquit unless evidence excludes every reasonable supposition but guilt properly refused.**

Requested charge to acquit unless evidence excludes every reasonable "supposition" but that of defendant's guilt was properly refused.

6. **Witnesses ⬅363(1)—Always permissible to show bias or prejudice.**

It is always permissible to show bias or prejudice of witnesses.

7. **Criminal law ⬅814(18)—Charge on bias or prejudice of witnesses held properly refused as abstract.**

In incest prosecution, requested instruction that jury could consider fact, if it found it to be fact, that prosecutrix was induced to testify because of fear that state would prosecute her on some charge in determining what

weight or credibility should be given her testimony, *held* properly refused as abstract.

**8. Witnesses ⚭241 — Question held merely preliminary and objection properly overruled.**

In incest prosecution, question by solicitor to prosecutrix, "Did your father ever do anything to you?" appearing on its face to be merely preliminary, objection was properly overruled.

**9. Criminal law ⚭1169(2)—Any error in admission of evidence held cured by other evidence.**

In incest prosecution, any error in permitting prosecutrix to answer question, "Would your father let you go anywhere and get out of his sight?" was cured by defendant having been allowed without objection to testify: "I did not keep her away from everybody and everything. * * * I did not want to leave her to the mercy of the people; did not want to leave her by herself."

**10. Witnesses ⚭286(1)—Prosecution on redirect examination could ask its own witness if she did not make statement conflicting with testimony on cross-examination.**

Where prosecutrix, in incest case, testified that her father had intercourse with her, and on cross-examination testified that he did not have intercourse with her, it was proper for solicitor on redirect to ask her if she did not tell him at certain time and place that her father did have something to do with her.

**11. Witnesses ⚭380(5)—Party may not ask own witness as to inconsistent statements merely to impeach.**

A party may ask his own witness whether he had not on former occasion made statements inconsistent with his testimony on trial, but not where the purpose and only effect is to impeach witness.

Appeal from Circuit Court, Madison County; James E. Horton, Jr., Judge.

Bob Duncan was convicted of incest, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Ex parte Duncan, 211 Ala. 614, 101 South. 475.

The following charges were refused to defendant:

"No. 3. I charge you to acquit unless the evidence excludes every reasonable supposition but that of defendant's guilt."

"No. 10. You may consider the fact, if you find it to be a fact, that the witness Irene Duncan was induced to testify in this case because of fear that the state would prosecute her on some charge, in determining what weight or credibility you give her testimony."

Robert Milner, of Huntsville, for appellant.

It was error to permit the solicitor to ask the prosecutrix if she did not tell him in the presence of Mr. Craft that defendant had had something to do with her. King v. State, 15 Ala. App. 67, 72 South. 552; Edelman v. Gadsden, 16 Ala. App. 381, 77 South. 914.

The general charge should have been given for defendant. Knight v. State, 152 Ala. 56, 44 South. 585; Walker v. State, 147 Ala. 699, 41 South. 176; Stone v. State, 105 Ala. 60, 17 South. 114; Justice v. State, 99 Ala. 180, 13 South. 658; Gay v. State, 19 Ala. App. 238, 96 South. 646; Code 1907, § 7127; Denton v. State, 17 Ala. App. 309, 85 South. 41. A defendant cannot be convicted on the uncorroborated testimony of an accomplice. Code 1907, § 7878; Denton v. State, supra; Morgan v. State, 11 Ala. 289. Charge 10 should have been given. Cooley v. State, 7 Ala. App. 163, 62 South. 292; A. G. S. v. Johnston, 128 Ala. 283, 29 South. 771; Fincher v. State, 58 Ala. 215.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The solicitor had the right to refresh the recollection of the witness. Linnehan v. State, 116 Ala. 471, 22 South. 662. Charge 3 is bad for the use of the word supposition. Walters v. State, 19 Ala. App. 92, 95 South. 207. The prosecutrix was not an accomplice.

BRICKEN, P. J. From a judgment of conviction for incest the defendant appealed.

[1] It was contended by the state that the defendant had sexual intercourse with his own daughter, a young girl about 13 years of age. His conviction rested upon the sole testimony of the girl herself, and there was no corroboration of any material fact given in evidence by any other witness. On her direct examination the girl gave evidence to the effect that she knew what intercourse was, and that on every cold night her father would get in bed with her and have intercourse. On her cross-examination, she testified that he never did have intercourse with her, but that he tried. And upon her redirect examination she stated that he did have intercourse with her one time. This evidence, as well as other filled with like discrepancies and contradictions given by this witness, of necessity presents the questionable verity of the testimony. But notwithstanding this, the probative force of her evidence was for the jury who tried this case, and not for this court.

[2] As stated, the conviction of this defendant rested solely upon the uncorroborated evidence of the girl in question, and the appellant here earnestly insists that the facts adduced upon this trial constitute said witness an accomplice in the commission of the offense, if offense there was, and it is further insisted that the provisions of section 7897 of the Code 1907 should apply. Said section expressly provides that a conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense, etc. The

important question therefore is: Was the girl in question an accomplice? In support of the insistence that she was an accomplice, we are cited the case of Denton v. State, 17 Ala. App. 309, 85 South. 41. We gather that the portion of the opinion relied upon here is where this court, through Samford, J., said:

"After carefully considering the evidence in this record, we fail to find facts sufficient to corroborate the testimony of the woman, who alone testified to the facts constituting the crime with which defendant is charged. If the crime was committed with the consent of the principal witness, the defendant would have been entitled to the general charge. Code 1907, §§ 7878, 7127. It is true, the woman testified that at each recurrent act the defendant used threats and intimidations, and that she yielded to him through fear, but the rape was too often repeated and continued too long without outcry for full credence to be given to the statement. But this question is not presented in such way as that it can be considered by this court on appeal, but may be a proper case for the consideration of the pardoning power."

We are of the opinion that the above holding cannot be taken as authority to sustain the insistence here made. In the first place, the quoted portion of the opinion was not necessary to a decision in the Denton Case, and therefore dictum. Moreover, this case must be differentiated from the Denton Case in that it affirmatively appears that the alleged injured party in this case was only 13 years of age at the time of the alleged commission of the offense and under the laws of this state was incapable of consenting to the commission of the alleged crime. In other words, it affirmatively appears she was too young to be able to give legal assent, and therefore she could not be held to have willfully or willingly joined in the incestuous act complained of. It is true that under the statute, Code 1907, § 7127, it is provided if any man and woman, being within the degrees of consanguinity or relationship within which marriages are declared by law to be incestuous and void, and knowing of such consanguinity or relationship, intermarry, or have sexual intercourse together, or live together in adultery, each of them would be guilty. But certainly this statute implies that each of the parties must be capable of committing the offense and under the law able to give legal assent thereto. The age of consent in this state is 16 years; and in all proceedings for having carnal knowledge of, or sexual intercourse with, a girl child under the age of 16, the consent of the girl is immaterial and affords no defense in actions of this character (except, that this law does not apply to boys who are under the age of 16 years). Acts 1915, p. 137.

The general rule, which seems to be supported by the great weight of authority, is that a woman who consents to the crime of incest knowingly, voluntarily, and with the same intent which actuates the man, is his accomplice, and her testimony is governed by the law of accomplice testimony. 31 Corpus Juris, p. 387. On the other hand, it is very generally held that, where the alleged injured party is not an accomplice, or in other words where she is the victim of force, or fraud or undue influence, or is too young to be able to give legal assent, so that she does not willingly or willfully join in the commission of the incestuous act, her testimony alone will be sufficient to sustain a conviction of incest. Authorities, supra.

In the case of Whittaker v. Com., 95 Ky. 632, 27 S. W. 83 (a case almost identical to the one at bar), it was held that under an indictment for incest committed by the defendant with his daughter, a conviction might be sustained on the testimony of the daughter alone, as she was incapable of consenting to the act and could not be regarded as an accomplice. The court said:

"The appellant was indicted, tried, and convicted for the crime of incest. He denied his guilt, and his conviction was secured on the testimony alone of his minor daughter, the alleged victim of his lust. There was no testimony in corroboration of the daughter, and for this reason it is insisted that the jury should have been told to acquit. They were, in effect, told that they might infer the consent of the daughter to the carnal knowledge of the father from its long continuance without complaint from her, and that, if there was such consent, then the daughter was an accomplice, and they could not convict on her testimony alone, unless they believed such connection or carnal knowledge was had by the undue influence of the accused. This instruction was more favorable to the appellant than he was entitled to. There could be no such consent as to affect in any way the guilt of the accused. The crime was committed against the daughter. She was not the accomplice, but the victim, of her father."

[3, 4] From what has been said the defendant was not entitled to the affirmative charge, though the evidence against him be manifestly weak and inconclusive. There was some evidence to sustain the accusation against him, and the rule is that the general charge should never be given, when there is any evidence, however weak and inconclusive it may be, tending to make a case against the party who asks it. Anderson v. State, 18 Ala. App. 585, 93 South. 279. In other words, this rule simply means that where there is conflict in the evidence as to material matters, the jury alone, and not the court, must consider and determine the facts. Charge 2 was consequently properly refused.

[5] Refused charge 3 was bad, if for no other reason, because of the use of the word "supposition." All cases in this state holding that the refusal of such a charge is erroneous have been to this extent expressly overruled. Smith v. State, 197 Ala. 202, 203, 72 South. 316.

. Refused ·charge 9 dealing with the question of accomplice was properly refused in this case for the reasons stated in the opinion hereinabove.

[6, 7] It is permissible always to show bias or prejudice of witnesses, but charge 10 dealing with this question is wholly abstract under the facts in this case and was therefore refused without error.

[8, 9] As to the rulings of the court upon the testimony to which exception was reserved, we will discuss them in the order in which they appear in the transcript. The solicitor propounded the following question to Irene Duncan: "Irene, did your father ever do anything to you?" This question as it appears on .its face was merely preliminary, and the objection thereto was properly overruled. The next exception noted·is the overruling of defendant's objection to a question to this same witness: "Now, would your father let you go anywhere and get out of his sight?" We do not hold there was error in overruling the objection to this question; but, if there was, it was cured by the defendant having been allowed without objection to testify:

"I did not keep her away from everybody and everything; I did not keep her away from anybody; I just tried to keep her under my control. I did not want her running up and down the river. When I had work to do in the shop, I would take her out and let her stay out there. I did not want to leave her to the mercy of the people; did not want to leave her by herself."

[10, 11] The prosecutrix, as stated, testified on her direct examination that every cold night her father (with whom she lived alone in a boat on the river) .would come and get in bed with her and have intercourse with her. But immediately thereafter she testified on cross-examination:

"He never did have intercourse with me; he tried. But he never did have intercourse with me; he just tried. I would not let him; I would turn over. He never did have anything to do with me; he tried. I would not let him. He woke me up at it. He would always get me awake and then I would turn over."

On her redirect examination she testified: "He never did anything to me; he just tried." Thereupon the solicitor was permitted to ask this witness over the objection of defendant: "Didn't you tell me in there (indicating) just now, in the presence of Mr. Craft, that your father did have something to do with you?" To which the witness answered: "Yes, in which he did once; he did once." And in reply to this question by the court, "Had intercourse once?" The witness answered, "Yes, sir."

In this connection appellant strenuously insists that the court erred in its several rulings. It is insisted that the rules of evidence do not allow a party to impeach his own witness, and that the only purpose the solicitor could have had in propounding the question was to impeach his own witness. We do not so conclude, as it is apparent that these conflicting statements of this witness were unexpected to the state and as a result the state was put to a disadvantage by this unexpected testimony; and the manifest purpose of the solicitor, to our mind, was to refresh the memory of the witness and to straighten out, if possible, the inconsistencies apparent in her testimony. There is direct authority to sustain the court in its rulings in this connection. The rule is that when ·a party offers a witness in proof of his cause, he thereby, in general, represents him as being worthy of belief, and of course he will not be permitted to impeach the witness' general reputation for truth, or otherwise show that he is unworthy of belief. But a party may ask his witness, for the purpose of refreshing his memory, or of showing that he has been put at a disadvantage by unexpected evidence, whether at a certain time and place he has not made certain statements inconsistent with his testimony on the stand, and this may. be done even though the admission of such inconsistent statements might or will injuriously affect witness' credibility with the jury. ,1 Greenleaf, Ev. § 444; Campbell v. State, 23 Ala. 44, 77; Hemingway v. Garth, 51 Ala. 530 (second head-note). "A party may ask his own witness, whether he has not, on a former occasion, made statements inconsistent with his testimony on the trial." But as stated, this cannot be done, when the purpose and only effect of such evidence is to impeach the witness. ·Gandy v. State, 81 Ala. 68, 1 South. 35. There was no error in the court's ruling by overruling defendant's objection and by denying the motion to exclude the answer.

Other rulings of the court upon the testimony need no discussion, as no error appears which would authorize this court to put the lower court in error. The duties of this court are appellate and revisory only. We are without authority to hold that the evidence in this case was insufficient to support the verdict of the jury and to sustain the judgment of conviction, as there was some evidence (though to our minds weak and inconclusive) which made it a question for the jury to determine. We cannot substitute ourselves for the jury that tried this case. One of the strongest authorities on this proposition, with which we are familiar, is the case of Woodson v. State, 170 Ala. 87, 54 South. 191. In that case the Supreme Court expressly declared that the evidence upon which the defendant was convicted was insufficient to warrant the conviction, but affirmed the case nevertheless as no error appeared in any of the rulings of the court complained of. If the wayward girl. the prosecutrix, who testified she left her home and also the care and protection of the Sal-

vation Army, and became an inmate in a house of ill fame, where she lived at the time of this trial, did not testify truthfully against her father, a great wrong has been done, and as the conviction of her father rested wholly upon her testimony, which testimony was very conflicting, uncertain, contradictory, and unsatisfactory, we think this case presents a grave and serious question to be considered by the pardoning powers of this state.

As no error appears in the rulings of the court nor in the record proper, we are powerless to do other than affirm the judgment of conviction appealed from, and it is so ordered.

Affirmed.