This action was filed by a group of stockholders of Ono Development Company, Inc., and Ono East, Inc. ("the corporations"), on behalf of themselves and the other stockholders of the corporations, and, derivatively, on behalf of the corporations, against Pannell Kerr Forster, an independent certified public accounting firm and two of its CPA employees, to recover damages for breach of contract and fraud. The trial court entered a summary judgment for the defendants, and the plaintiffs appealed.[1] We affirm.
The plaintiffs, all of whom voluntarily sold their stock back to the corporations while this action was pending, alleged that the defendants had failed to disclose in annual audits of the corporations that certain commissions were being improperly paid to and by three of the corporations' principal officers and directors; that, as a result of the defendants' actions, the corporations had been "deprived of the use of large sums of money over an approximate *Page 144 
10-year period"; and that the suit had been filed only after each corporation's board of directors had rejected a request that the corporation file suit to recover damages from the defendants.[2] The defendants, relying primarily on Shelton v.Thompson, 544 So.2d 845 (Ala. 1989), contend that the summary judgment was proper. They argue, among other things, that the plaintiffs lacked standing to sue on their own behalf because the alleged wrongs were to the corporations, and that the plaintiffs lacked standing to sue on behalf of the corporations because they had voluntarily sold their stock. The plaintiffs contend that they had standing to sue on their own behalf because one of the two remaining stockholders in the corporations "assigned" to them all of "his right, title and interest to and all of the monies now due or which may hereafter become due him" in this suit, "together with all of the rights of action accruing or which may hereafter accrue thereunder," and "empowered" the plaintiffs "in their own name and capacity, to do and perform all acts, matters and things touching the premises in like manner to all interests and purposes and, if necessary, to sue for the recovery of such damages as may be awarded" in the suit. The plaintiffs contend that they also had standing to sue on behalf of the corporations because, they argue, they retained equitable interests in the stock of the corporations by virtue of the assignment.
In Shelton v. Thompson, supra, as in the present case, the plaintiffs filed both derivative and personal claims. InShelton, as here, the individual damages sought to be recovered by the plaintiffs were incident to their status as stockholders. In Shelton, this Court held:
 "We affirm that portion of the summary judgment as it relates to the plaintiffs' claim on their own behalf. Whatever damages the plaintiffs may have suffered were incident to their status as stockholders; and whatever recovery may be effected by the derivative action inures to the benefit of all innocent stockholders and not to the plaintiff stockholders individually. Green v. Bradley Construction, Inc., 431 So.2d 1226
(Ala. 1983); see, also, Stevens v. Lowder, 643 F.2d 1078 (5th Cir. 1981)."
544 So.2d at 847. Based on the rule enunciated inShelton, we conclude that the summary judgment on the plaintiffs' individual claims in the present case was also proper.[3] The "assignment" in no way altered the primary nature of the damages sought to be recovered by the plaintiffs — damages for the loss of corporate funds.
This Court in Shelton also stated as follows:
 "The defendants' first 'lack of standing' contention is that, as a matter of substantive law, once the plaintiffs lost their stockholder status in [the Bank of Lexington], they lost their standing to prosecute a derivative action. Unquestionably, this is the rule where, under ordinary circumstances, the stockholder voluntarily divests himself of any interest in the corporation. Of course, where a stockholder sells his stock, either to the corporation or to a third party, that stockholder, generally speaking, can not claim standing to maintain a derivative action on behalf of the corporation in which he no longer owns an interest. Green v. Bradley Construction, Inc., [431 So.2d 1226 (Ala. 1983)]; see, also, Empire Realty Co. v. Harton, 176 Ala. 99, *Page 145 57 So. 763 (1911) (holding that the plaintiff, who had surrendered his stock involuntarily as a consequence of a levy of execution, lost his standing to maintain a derivative suit)."
544 So.2d at 848. The plaintiffs point out that this rule is not without exception, as evidenced by the holding inShelton itself — that the merger of the Bank of Lexington and Colonial Bank of Northwest Alabama did not deprive the stockholders of the Bank of Lexington of standing to challenge alleged wrongdoing by that bank's former officers and directors. However, the "merger" exception recognized and applied in Shelton is not applicable in the present case. Here, the plaintiffs made informed decisions to sell their stock while this action was pending. By voluntarily divesting themselves of their interests in the corporations, the plaintiffs lost their standing to prosecute the derivative action. The "assignment" did not vest in the plaintiffs any ownership interests in the stock of the corporations and, contrary to the plaintiffs' assertions, it did not provide them with a basis for maintaining the derivative action.
For the foregoing reasons, we hold that the summary judgment was proper, and, therefore, that it is due to be affirmed. Because of our resolution of this question, we find it unnecessary to consider the defendants' argument that the summary judgment was proper based on the "business judgment rule," the application of which allows for deference to be given, under proper circumstances, to a decision of the board of directors of a corporation not to have the corporation file suit. See Roberts v. Alabama Power Co., 404 So.2d 629
(Ala. 1981). We do note, however, that the defendants' argument in this respect was persuasive on its face.
AFFIRMED.
HORNSBY, C.J., and KENNEDY and INGRAM, JJ., concur.
MADDOX, J., concurs in the result.
[1] This is the second time that these parties have been before this Court. The trial court had previously entered a summary judgment for the defendants on the ground that the plaintiffs' action was time-barred. We reversed that judgment, holding that the applicability of the statute of limitations defense could not be determined as a matter of law, but, instead, had to be resolved by the trier of fact. See McLaughlin v. Pannell KerrForster, 504 So.2d 264 (Ala. 1987).
[2] The record indicates that the officers and directors involved in the questionable transactions paid $100,000 to the corporations as compensation for the corporations' loss of use of their funds. This payment was made pursuant to the terms of a settlement agreement in a previous derivative action against those officers and directors.
[3] We note that it is conceivable that the defendants owed the plaintiffs a duty not to make false representations, inasmuch as the plaintiffs were "members of a group or class [stockholders] that the [defendants had] special reason to expect to be influenced by" the defendants' representations. See Colonial Bank of Alabama v. Ridley Schweigert,551 So.2d 390, 396 (Ala. 1989). However, as previously stated, the plaintiffs did not allege that any wrong had been done to them personally. Instead, they alleged that the defendants' actions with respect to the corporations had resulted in the corporations' losing the use of certain funds. We also note that the plaintiffs did not seek to recover from the defendants under a third-party beneficiary contract theory.